# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| **THE STATE OF NEW MEXICO, ex rel. HECTOR BALDERAS, ATTORNEY GENERAL**, | § § § § | |
| Plaintiff, | § § | No.:2:20-cv-01355 KG-KRS |
| v. | § § | |
| **STERIGENICS U.S., LLC, SOTERA HEALTH HOLDINGS, LLC, SOTERA HEALTH LLC, and SOTERA HEALTH COMPANY,** | § § § § § | |
| Defendants. | § § | |

## <u>THE STATE OF NEW MEXICO'S MOTION TO REMAND</u>

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ........................................................................................ ii
I.     INTRODUCTION ..................................................................................................1
II.    STATEMENT OF FACTS ....................................................................................2
III.   ARGUMENT ........................................................................................................7
       A.    STANDARDS FOR REMOVAL..................................................................7
       B.    STERIGENICS HAS FAILED TO ESTABLISH THAT ORIGINAL FEDERAL JURISDICTION
             EXISTS OVER THIS ACTION....................................................................9
             i.     Sterigenics has not satisfied its burden of showing that a federal issue
                    is "necessarily raised" in this case..........................................................10
             ii.    Sterigenics has not established that a federal issue, to the extent one
                    has been raised, is "actually disputed" in this case ...................................13
             iii.   Sterigenics has not shown that a federal issue, to the extent one is
                    necessarily raised, is "substantial" in this case .........................................14
             iv.    Sterigenics has not established that removal would preserve the
                    "balance of federal and state judicial responsibilities"............................15
IV.    CONCLUSION ....................................................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*New Mexico ex rel. Balderas v. Monsanto Co.*,
    454 F. Supp. 3d 1132 (D.N.M 2020) ...................................................................7

*State of New Mexico ex rel. Balderas v. Preferred Care, Inc.*,
    158 F. Supp. 3d 1226 (D.N.M. 2015)....................................................................7

*Baldonado v. El Paso Nat. Gas Co.*,
    No. CIV-08-JC/LCS, 2008 WL 11322139 (D.N.M. May 7, 2008).......................7

*Bell v. Cheswick Generating Station*,
    734 F.3d 188 (3d Cir. 2013) ...............................................................................18

*Board of County Commissioners of Boulder County v.
Suncor Energy (U.S.A.) Inc.*,
    405 F. Supp. 3d 947 (D. Col. 2019) ....................................................................12

*Caterpillar, Inc. v. Williams*,
    482 U.S. 386 (1987) ........................................................................................8, 13

*De La Rosa v. Reliable, Inc.*,
    113 F. Supp. 3d 1135 (D.N.M. 2015)....................................................................7

*Empire Healthchoice Assurance, Inc. v. McVeigh*,
    547 U.S. 677 (2006) ...........................................................................................14

*Fracasse v. People's United Bank*,
    747 F.3d 141 (2d Cir. 2014) ...............................................................................15

*Franchise Tax Bd. v. Constr. Laborers Vacation Trust*,
    463 U.S. 1 (1983)..........................................................................................8, 16

*Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*,
    545 U.S. 308 (2005) ....................................................................................*passim*

*Gunn v. Minton*,
    568 U.S. 251 (2013) ........................................................................ 9, 13, 14, 15

*Her Majesty the Queen in Right of the Province of Ontario v. Detroit*,
    874 F.2d 332 (6th Cir.1989) ...............................................................................17

*Kokkonen v. Guardian Life Ins. Co.*,
    511 U.S. 375 (1994) ........................................................................................7, 9

*Laughlin v. Kmart Corp,*
    50 F.3d 871 (10th Cir. 1995) ...................................................................7

*State of W. Va. Ex rel. McGraw v. CVS Pharm., Inc.,*
    646 F.3d 169 (4th Cir. 2011) ..................................................................8

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Manning,*
    136 S. Ct. 1562 (2016) ..........................................................................15

*New Mexico ex rel. National Educ. Ass'n of New Mexico, Inc. v. Austin Capital*
    *Management Ltd.,*
    671 F. Supp. 2d 1248 (D.N.M. 2009)......................................................9

*Illinois ex rel. Raoul v. Sterigenics US LLC,*
    No. 18 C 8010, 2019 WL 1112271 (N.D. Ill. Mar. 11, 2019) ............. 2, 11, 12, 17

*State of Nevada v. Bank of Am. Corp.,*
    672 F.3d 661 (9th Cir. 2012) ..............................................................8, 15

*Syngenta Crop Prot., Inc. v. Henson,*
    537 U.S. 28 (2002) ..................................................................................7

*Vaden v. Discover Bank,*
    556 U.S. 49 (2009) ..................................................................................8

**Statutes**

28 U.S.C. § 1331....................................................................................................15

28 U.S.C. § 1441(a) .............................................................................................7, 9

28 U.S.C. § 1447(c) ................................................................................................2

42 U.S.C. § 7416.............................................................................. 11, 16, 17, 18

The State of New Mexico, by its Attorney General Hector H. Balderas (the "State" or "Plaintiff"), respectfully requests that the Court remand this matter back to the Third Judicial District Court, County of Doña Ana, because Sterigenics U.S., LLC ("Sterigenics") and the other Defendants (together with Sterigenics, "Defendants") have failed to show any basis for federal question jurisdiction.

## I.    INTRODUCTION

The State of New Mexico has exercised its sovereign right to initiate this legal action in State court, based solely on New Mexico law, to recover damages and remedy the harm caused to its residents and itself arising from Defendants' unlawful emissions of the highly toxic, carcinogenic air pollutant ethylene oxide ("EtO") from Sterigenics' sterilization operations at its Santa Teresa, New Mexico facility (the "Santa Teresa Plant" or the "Plant"), deteriorating the air quality in Santa Teresa and surrounding communities and materially contributing to increased health risks suffered by the residents of these communities.  As such, on December 22, 2020, the State filed in the Third Judicial District Court, County of Doña Ana, New Mexico, its six-count *Verified Complaint with Jury Demand and* Ex Parte *Request for Temporary Restraining Order and Preliminary Injunction* (the "Complaint") against Defendants, alleging solely state-law claims including (a) common law public nuisance; (b) violations of New Mexico's public nuisance statute, NMSA 1978 §§ 30-8-1, *et seq.*; (c) common law strict liability; (d) common law negligence; (e) a request for a temporary restraining order and preliminary injunctive relief to abate the continued uncontrolled emission of EtO from the Plant; and (f) violations of New Mexico's Unfair Practices Act, 1978 NMSA §§ 57-12-1, *et seq.*  The State's Complaint seeks no relief under federal law.  *See generally* Dkt. 1, Ex. B.

Nonetheless, on December 28, 2020, Sterigenics, with the consent of the remaining Defendants, filed a Notice of Removal, removing the case to this Court. (*See* Notice of Removal,

Dkt. 1).  In its Notice of Removal, Sterigenics contends that the State's environmental enforcement action gives rise to federal question jurisdiction.  Because the State's Complaint only alleges claims under New Mexico law, this Court lacks subject matter jurisdiction to adjudicate the State's claims and should remand this case back to the originating court, the Third Judicial District Court, County of Doña Ana, pursuant to 28 U.S.C. § 1447(c) ("[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded").  Notably, Sterigenics has unsuccessfully sought to remove similar state enforcement actions brought against it by other state plaintiffs on the basis of substantially similar—and similarly meritless—federal question jurisdiction grounds.  *See Illinois ex rel. Raoul v. Sterigenics US LLC*, No. 18 C 8010, 2019 WL 1112271 (N.D. Ill. Mar. 11, 2019) ("*Illinois*").  Like the federal court in that case, this Court should promptly remand this action to state court, where it belongs.

## II.   STATEMENT OF FACTS

Since 1989, Defendants (or their predecessors) have used and continue to use substantial quantities of the highly toxic, carcinogenic air pollutant EtO in their industrial sterilization and fumigation processes at the Santa Teresa Plant, which is then released from Defendants' Plant into the surrounding atmosphere through both controlled and uncontrolled means.  Once released into air, EtO can and does travel significant distances with air currents, and can remain in ambient air for over 200 days.  EtO emitted by Defendants from the Santa Teresa Plant has significantly deteriorated air quality in Santa Teresa and surrounding communities, and has materially contributed to increased health risks suffered by residents of these communities.

EtO is genotoxic (i.e., it damages DNA) and is known to cause cancer, including lymphoma, leukemia, stomach cancer, and breast cancer.  The National Toxicology Program, a federal program, has recognized EtO as a known human carcinogen since 2000, and as a likely human carcinogen since 1985.  Specifically, in 1990, the U.S. Environmental Protection Agency

("EPA") listed EtO as a hazardous air pollutant under the federal Clean Air Act ("CAA"), and categorized EtO as "probably carcinogenic to humans."  EPA recognized EtO as a human carcinogen in 2016, following studies demonstrating that EtO is up to 30 times more toxic than EPA previously believed.

Even at very low levels, inhalation of EtO-contaminated air significantly increases the risk of developing cancer and other adverse health effects.  Indeed, it has been shown that EtO exposure increases the cancer risk because DNA damage can take place with each and every exposure that is passed on to more cells, thereby increasing the number of mutated cells.  Based on this concern, the EPA increased the lifetime inhalation risk for EtO in 2016 by a factor of about 30.

Since 1989, Defendants have reported emitting several tons of EtO per year from the Santa Teresa Plant through controlled sources, including sterilizer vacuum pumps, acid-water scrubbers, catalytic oxidizers and back vent exhaust systems (controlled after 2014).  However, Defendants have also caused substantial **unreported, uncontrolled** releases of EtO to the atmosphere from the Santa Teresa Plant as a result of their intentional or negligent subversion of environmental controls.

Due to Defendants' lax oversight in connection with sterilization operations—such as the practice of routinely leaving sterilization chamber doors ajar between sterilization cycles—EtO levels in the ambient indoor air at Defendants' Santa Teresa Plant were often elevated, as indicated by an air-quality monitoring system.  To dissipate the elevated concentrations of EtO inside the Plant, Defendants caused shipping bays and large facility doors to be left open for hours or entire days, releasing excess EtO into the atmosphere in an uncontrolled and unfiltered manner.  Further, during regular cleaning and maintenance operations, on an at least monthly basis, Defendants caused the removal of EtO and ethylene glycol residues that had been built up within the

sterilization chambers by spraying the residues with a hose and then simply releasing the EtO and ethylene glycol residues through an ordinary drain.

The Santa Teresa Plant also contributed uncontrolled emissions of EtO when it assisted other Sterigenics facilities in performing sterilization operations, including aeration of sterilized products.  For example, Sterigenics caused shipments of sterilized devices and equipment to be delivered to the Santa Teresa Plant from the company's San Diego facility on a near-weekly basis so that such devices and equipment could be aerated for 24 hours in the Santa Teresa Plant.  As these shipments had been sterilized using EtO, but not aerated, they were off-gassing EtO during the shipping, receiving, and loading phases, including at the Santa Teresa Plant, further contributing to the uncontrolled release of EtO in the Santa Teresa region and the State more broadly.

Defendants' EtO emissions from the Santa Teresa Plant have adversely affected local residents and air quality and will continue to do so unless Defendants' practices are enjoined. Indeed, in August 2018, the EPA published results from its 2014 National Air Toxics Assessment ("NATA") study.  The study showed that, due to Defendants' **reported** emissions of EtO in 2014 alone, residents of Santa Teresa and surrounding locations are at a statistically significantly increased risk of developing cancer.

The NATA data shows that, as of 2014, Doña Ana County residents in the census tract that likely suffered the most exposure to EtO have a cancer risk of 214.5543 per 1 million, more than *7 times* the national average (approximately 30 per 1 million), and that this increased risk is due to EtO exposure.  The NATA data similarly shows that Doña Ana County residents in nearby census tracts suffer increased cancer risk due to EtO exposure.  Because the Santa Teresa Plant is the only significant source of EtO in the Santa Teresa region, and the only source considered in

the study's assessment of Doña Ana County, this increased cancer risk is wholly or substantially attributable to Defendants' operations.

Importantly, Sterigenics' pre-2014 reported EtO emissions were much higher than the emissions that formed the basis for the NATA study.  Indeed, from 1989 to 2013, Defendants reported emitting thousands more pounds of EtO as compared to 2014 and from 2005 to 2013 alone, Defendants reportedly emitted at least 10,000 pounds of EtO per year.  What is more, as revealed in the State's presuit investigation, Defendants have further caused EtO emissions far in excess of the reported totals as a result of deficient environmental controls and intentional subversion of environmental controls.  If anything, therefore, the NATA study greatly underestimates the historic and current impact of Defendants' EtO emissions, and the increased cancer risk in Doña Ana County.

Separately, the State conducted sampling of ambient outdoor air within a four-mile radius of the Santa Teresa Plant for EtO.  This investigation confirmed the substantial risk to New Mexico residents based on Defendants' EtO emissions.  **Every one** of the air samples collected in the presuit investigation within a four-mile radius of the Santa Teresa Plant detected ambient airborne concentrations in excess of the EPA's established inhalation unit risk ("IUR") of .03 ug/m³, including one sample that was **96 times the EPA's cancer risk level** (measured at 2.88 ug/m³).  A map showing the exceedances of the EPA's IUR threshold appears below:



Although the State has defended and will continue to defend its regulatory and permitting authority, the instant action was necessitated by the Defendants' refusal to address the urgent crisis presented at the Santa Teresa Plant. The public continues to be exposed to EtO at elevated levels due substantially to Defendants' uncontrolled emissions and the practices outlined above. Accordingly, the State – under its authority to protect the New Mexico public from imminent and substantial endangerment – filed its Complaint alleging various state law claims and requesting a temporary restraining order and preliminary injunction requiring Defendants to suspend any and all uncontrolled emissions of EtO from the Plant, on an interim basis pending trial, and seeking recovery of all damages and other remedies available under New Mexico law.

III.    **ARGUMENT**

A.    STANDARDS FOR REMOVAL

Defendants face a significant burden on removal: Courts presume that federal jurisdiction does not exist over a removed case unless the defendant can affirmatively show otherwise.  *See New Mexico ex rel. Balderas v. Monsanto Co.*, 454 F. Supp. 3d 1132, 1138 (D.N.M 2020) (Johnson, C.J.). "Federal courts are courts of limited jurisdiction. They possess only that power authorized by the Constitution and statute . . . which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994) (citation omitted); *see also State of New Mexico ex rel. Balderas v. Preferred Care, Inc.*, 158 F. Supp. 3d 1226, 1229 (D.N.M. 2015) ("It is a foundational premise of American federalism that '[f]ederal courts are courts of limited jurisdiction.'") (quoting *Gunn v. Minton*, 568 U.S. 251, 256 (2013)). "[I]t is to be presumed that a cause lies outside this limited jurisdiction and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen*, 511 U.S. at 377.

Removal is entirely a creature of statute and removal statutes must be strictly construed, with all ambiguities to be resolved in favor of remand.  *See Laughlin v. Kmart Corp*, 50 F.3d 871, 873 (10th Cir. 1995) (under 28 U.S.C. § 1441(a), there is a strong presumption against removal jurisdiction, and doubtful cases must be resolved in favor of remand); *Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 32 (2002) (citations omitted) ("[R]emoval is entirely a creature of statute" and the removal statutes "are to be strictly construed."); *Baldonado v. El Paso Nat. Gas Co.*, No. CIV-08-JC/LCS, 2008 WL 11322139, at *2 (D.N.M. May 7, 2008) ("All doubts must be resolved in favor of remand.") (citation omitted).  Further, defendants seeking removal bear the burden of showing that federal court jurisdiction is proper "by a preponderance of the evidence." *Monsanto*, 454 F. Supp. 3d at 1138 (quoting *McPhail v. Deere & Co.*, 529 F.3d 947, 955 (10th Cir. 2008); *see also De La Rosa v. Reliable, Inc.*, 113 F. Supp. 3d 1135, 1151 (D.N.M. 2015).

Here, Defendants claim that removal is proper because the State's Complaint – which asserts only state-law causes of action – presents substantial federal questions. "The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987). Thus, "a defendant may not remove a case to federal court unless the *plaintiff's* complaint establishes that the case 'arises under' federal law." *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 10 (1983) (emphasis in original) (citation omitted). This "longstanding" doctrine, known as the "well-pleaded complaint rule," protects against the improper removal of state-law claims to federal court. *Vaden v. Discover Bank*, 556 U.S. 49, 60 (2009). Pursuant to the rule, "the plaintiff [is] master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." *Caterpillar*, 482 U.S. at 392.

Finally, the foregoing restrictions on removal, applicable to all attempts to remove state-court actions to federal court, are heightened where, as here, the action is brought by a State sovereign. In such cases, "considerations of comity make [courts] reluctant to snatch cases which a State has brought from the courts of that State, unless some clear rule demands it." *Laborers Vacation Trust*, 463 U.S. at 21 n.22; *see also State of W. Va. Ex rel. McGraw v. CVS Pharm., Inc.*, 646 F.3d 169, 179 (4th Cir. 2011). Indeed, where a state attorney general "alleges only state law causes of action, brought to protect" its state residents, then "the 'claim of sovereign protection from removal arises in its most powerful form.'" *State of Nevada v. Bank of Am. Corp.*, 672 F.3d 661, 676 (9th Cir. 2012) (quoting *CVS Pharm.*, 646 F.3d at 178).

**B.   STERIGENICS HAS FAILED TO ESTABLISH THAT ORIGINAL FEDERAL JURISDICTION EXISTS OVER THIS ACTION**

Because "[f]ederal courts are courts of limited jurisdiction," *Kokkonen*, 511 U.S. at 377, Defendants must show that this Court would have had original jurisdiction over this cause of action to properly remove this case. 28 U.S.C. § 1441(a). "Congress has authorized the federal district courts to exercise original jurisdiction in 'all civil actions arising under the Constitution, laws, or treaties of the United States[.]'"[1] *Gunn*, 568 U.S. at 257 (quoting 28 U.S.C. § 1331). A case can "aris[e] under" federal law when a claim originating under state law necessarily raises a substantial federal question.[2] *Id.* at 258. To establish removal jurisdiction under the substantial federal question test, however, Defendants must satisfy the following four criteria: (1) the state-law claim must "necessarily raise a stated federal issue," (2) the federal issue must be "actually disputed," (3) the dispute must be "substantial," and (4) hearing the case in a federal forum must not "disturb[] any congressionally approved balance of federal and state judicial responsibilities." *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308, 314 (2005); *see also Gunn*, 568 U.S. at 258. Failure to satisfy any one of these four factors means federal subject matter jurisdiction does not exist. *Gunn*, 568 U.S. at 258.

As is obvious from even a cursory review of the Complaint, the State's claims are predicated on violations of New Mexico common law, including for public nuisance and negligence, and state statutes, namely the New Mexico Public Nuisance Statute and Unfair

---

[1] The parties appear to agree that diversity jurisdiction does not exist in this case, as there can be no diversity of citizenship between the State of New Mexico and any Defendant. *See, e.g.*, *New Mexico ex rel. National Educ. Ass'n of New Mexico, Inc. v. Austin Capital Management Ltd.*, 671 F. Supp. 2d 1248, 1250 (D.N.M. 2009) ("it is settled law that neither a state nor an arm of a state is a 'citizen' of any state, for purposes of the diversity-jurisdiction statute") (citing *Moor v. County of Alameda*, 411 U.S. 693, 717 (1973)).

[2] A case may also arise under federal law "when federal law creates the cause of action asserted." *Id.* Defendants do not contend that this standard applies in this case.

Practices Act. Undeterred, however, Sterigenics argues that New Mexico's state law public nuisance claims implicate a "substantial federal question conferring subject matter jurisdiction on the Court." (Dkt. 1 at ¶ 27).[3] Because the claims asserted by the State present no actual, necessary or substantial issues of federal law that a federal court may hear without disturbing the balance between federal and state judicial responsibilities, Sterigenics has not satisfied the *Grable* standard, and this case must be remanded to state court.

### i. Sterigenics has not satisfied its burden of showing that a federal issue is "necessarily raised" in this case

The first prong of the *Grable* test requires that a defendant establish that a federal issue is "necessarily raised" under plaintiff's complaint. In arguing that federal law is necessarily raised here, Sterigenics states that it is "authorized to use and emit ethylene oxide from the Facility in accordance with the federal Clean Air Act, NESHAP and the Federal EO Sterilization Facility Standards." Dkt. 1 at ¶ 29. Sterigenics then extrapolates that the State could only support its public nuisance claims if it could demonstrate that these federal standards were either unlawful or do not authorize Defendants' conduct, such that Defendants emitted EtO "without lawful authority." *Id.* Based on this theory, Sterigenics contends that the State's allegations and requested relief provide the basis for the "necessarily raises" prong of the *Grable* test. (Dkt. 1 at ¶¶ 23-24).

As an initial matter, Sterigenics' Notice of Removal incorrectly frames the State's allegations by suggesting that the Santa Teresa Plant is operating in compliance with federal authority. Quite the contrary, the State's Complaint makes clear that Defendants' conduct in creating a public nuisance included acts that intentionally or negligently subverted existing

---

[3] Sterigenics does not argue that the State's remaining state law claims for negligence, strict liability, and violations of the New Mexico Unfair Practices Act support "arising under" jurisdiction and instead claims that the Court would have supplemental jurisdiction over such claims.

environmental controls required by state and federal law.  (*See id.*, Ex. B at ¶ 19).  Sterigenics does not argue – nor could it – that any federal law authorizes or permits its subversion of environmental controls, as alleged in the Complaint.

Moreover, Sterigenics' argument turns the State's Complaint on its head.  The State does not challenge the lawfulness of federal regulations.  Nor does it assert claims arising from violations of federal laws. Instead, the State simply alleges that Defendants' EtO emissions from the Santa Teresa Plant created and maintained a public nuisance under New Mexico's statutory and common law.  As the District Court in the Northern District of Illinois only recently acknowledged in a matter addressing nearly identical efforts by Sterigenics to impermissibly remove state law claims by another sovereign to federal court, regardless of whether Sterigenics' emissions comply with the federal CAA, the State's claims ensure that "the scope of *state* law— which may set more stringent standards under the CAA, *see* 42 U.S.C. § 7416—will be the focus of the suit." *Illinois*, 2019 WL 1112271, at *4.  The *Illinois* court remanded the State's litigation back to state court.[4]  As explained in section III.B.iv below, any other ruling would significantly upset the delicate state-federal balance established by Congress in enacting the CAA's savings clause.

At most, Sterigenics has recast a simple federal preemption defense by arguing that the interpretation of federal standards would be necessary to the adjudication of the State's nuisance claims because those claims purportedly hinge on whether Sterigenics was operating in

---

[4] Sterigenics also suggests that the State's claims and any remedy provided by the court could potentially conflict with processes approved by the U.S. Food and Drug Administration and designated by the U.S. Department of Health and Human Services as necessary and important to address the current COVID-19 pandemic. (Dkt. 1 at ¶¶ 6-10.) However, there are no allegations in the State's Complaint concerning such federal processes or regulations, and any injunctive relief imposed by the state court would be for the sole purpose of addressing Sterigenics' public nuisance and addressing the severe public health risk caused by such conduct as alleged in the Complaint.

compliance with federal law.  But a preemption defense, of course, cannot form the basis for removal. *See id*. at *5 (citing *Caterpillar*, 482 U.S. at 393 ("[A] case may not be removed to federal court on the basis of a federal defense, including the defense of pre-emption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue.")).  Sterigenics maintains that the State has the affirmative burden of showing that Defendants' conduct was not lawful under any federal law or regulation. But in reality, the State may need to address those issues only if one or more Defendants chooses to raise them in defending the case.  The State does not have the obligation of searching out all federal laws and regulations and putting on proof that no such law or regulation authorized Defendants to act as they did; instead, Defendants may decide to argue that certain federal laws or rules have permitted or authorized their conduct, and the State will respond in turn, as with any other defense.  This dynamic confirms that Sterigenics' removal petition is founded entirely on a federal defense, which as a matter of law fails to "necessarily raise" a federal question for jurisdictional purposes.

Although federal issues may be raised by these defenses and federal rules and regulations may become relevant as background, the actual dispute that must be resolved (i.e., whether a nuisance was created or maintained by Defendants), is entirely one of New Mexico state law.  *See Board of County Commissioners of Boulder County v. Suncor Energy (U.S.A.) Inc.*, 405 F. Supp. 3d 947, 966 (D. Col. 2019) (dismissing argument that federal law was "necessarily raised" by the State in alleging state common law claims "because the nuisance claims . . . did 'not rely on any federal statutes or regulations' or violations thereof,'" and while "federal laws and regulations . . . may supply potential defenses . . . federal law was 'plainly not an element' of [Plaintiff's] state

law nuisance claims") (citing and quoting *Mayor and City Council of Baltimore v. BP P.L.C.*, 388 F. Supp. 3d 538 (D. Md. 2019)).

If Defendants were correct that every case that may touch on federally regulated conduct must be brought in federal court, then virtually every claim under state nuisance laws would become federal, and every case involving environmental contamination of any kind would certainly become federal. Of course, this is not the law—a plaintiff has the burden of responding to federal preemption or other federal defenses only if the defendant elects to raise those issues. Under well-established Supreme Court jurisprudence, this is not sufficient to confer federal question jurisdiction. *Caterpillar*, 482 U.S. at 393. Because all four prongs of the *Grable* test must be met in order for federal question jurisdiction to exist and because Sterigenics has failed to (and cannot) establish that a federal issue is "necessarily raised" in this case, this case must be remanded to state court.

<div align="center">

ii.    **Sterigenics has not established that a federal issue, to the extent one has been raised, is "actually disputed" in this case**

</div>

To satisfy *Grable*'s second prong, Sterigenics must show that a federal issue is "actually disputed" for a federal court to exercise subject matter jurisdiction. *Grable*, 545 U.S. at 314; *see also Gunn*, 568 U.S. at 258. Yet, in its Notice of Removal, Sterigenics does not contend that any federal issue alleged within the four corners of the State's Complaint is "actually disputed." (Dkt. 1 at pp. 11-14 (discussing three of the four prongs of the *Grable* test and asserting in a conclusory manner that the State's clearly pled state law nuisance claims demonstrate an actual dispute under federal law, Dkt. 1 at ¶ 29). As noted above, the State's Complaint does not assert claims arising out of a violation of the federal CAA or, more specifically, the federal National Emission Standards for Hazardous Air Pollutants for Ethylene Oxide Commercial Sterilization and Fumigation Operations ("NESHAPs"). Rather, New Mexico alleges that Defendants tortiously caused,

<div align="center">13</div>

threatened or allowed dangerous, unlawful, uncontrolled, and unpermitted emissions of EtO that created and maintained a public nuisance – in violation of New Mexico law. Sterigenics has failed to satisfy its burden of establishing that a federal issue is "actually disputed" in this case and thus cannot support its request for removal.

### iii. Sterigenics has not shown that a federal issue, to the extent one is necessarily raised, is "substantial" in this case

Under the third prong of the *Grable* test, in order for federal subject matter jurisdiction to exist over a state-law claim, that claim must raise a "substantial" federal issue. *Grable*, 545 U.S. at 314. In construing this prong, the Supreme Court has held that "it is not enough that the federal issue be significant to the particular parties in the immediate suit." *Gunn*, 568 U.S. at 260. Rather, federal courts must look to "the importance of the issue to **the federal system as a whole**." *Id.* (emphasis added). A federal issue *may* be substantial where: (1) the "state adjudication would undermine the development of a uniform body of [federal] law," *id.* at 261 (quoting *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 162 (1989)); and (2) where the case presents "a nearly pure issue of law . . . that could be settled once and for all and thereafter would govern numerous [federal] cases." *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 700 (2006) (quotation marks and citations omitted). These are demanding standards that are far from satisfied here.

Indeed, here, the State's Complaint is "fact bound and situation-specific," *Empire*, 547 U.S. at 701, alleging air pollution by Sterigenics at its Santa Teresa Plant in violation of New Mexico law, posing a substantial public health risk to New Mexico residents. The resolution of this case will not impact a general area of federal law or undermine any federal agency's ability to conduct its business. *Gunn*, 568 U.S. at 260; *Empire*, 547 U.S. at 700-01. Rather, the state court will be asked to adjudicate purely state law claims, with (undisputed) federal standards such as the EPA

14

IUR being, at most, borrowed to inform state law. That is insufficient to wrest this litigation, pursued by the sovereign to protect its citizens, from state court. Indeed, in *Nevada v. Bank of America*, the Ninth Circuit explained that the fact that Nevada state law included a "borrowing" provision under which state law adopted federal standards, failed to present a substantial federal question for jurisdictional purposes. 672 F.3d at 674-75 (citing *Merrell Dow*, 478 U.S. at 817); *see also Fracasse v. People's United Bank*, 747 F.3d 141, 145 (2d Cir. 2014) (analyzing *Gunn* and concluding that even assuming a federal issue is raised, it is not substantial as "[n]either the federal government nor the federal system as a whole has a pressing interest in ensuring that a federal forum is available to defendants in state tort suits").

Because the substantiality element required by *Grable* is lacking here, this matter should be remanded.

### iv. Sterigenics has not established that removal would preserve the "balance of federal and state judicial responsibilities"

Finally, as the Supreme Court recognized in *Grable*, even when an "actual," "necessary" and "substantial" federal question is clearly raised by a complaint, the district court may still find federal jurisdiction lacking where its exercise is inconsistent "with congressional judgment about the sound division of labor between state and federal courts governing the application of § 1331." *Grable*, 545 U.S. at 313-14. More recently, the Supreme Court explained the following:

> [o]ut of respect for state courts, this Court has time and time again declined to construe federal jurisdictional statutes more expansively than their language, most fairly read, requires. We have reiterated the need to give "[d]ue regard [to] the rightful independence of state governments"—and more particularly, to the power of the States "to provide for the determination of controversies in their courts." Our decisions, as we once put the point, reflect a "deeply felt and traditional reluctance . . . to expand the jurisdiction of federal courts through a broad reading of jurisdictional statutes."

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Manning*, 136 S. Ct. 1562, 1573-74 (2016) (citations and footnote omitted) (in determining absence of federal jurisdiction over a removed

case, the Court refused to accept "the construction offered [which] would place in federal court actions bringing only claims created by state law – even if those claims might raise federal issues"). Moreover, in litigation pursued by the State sovereign, such as this one, "considerations of comity make [federal courts] reluctant to snatch cases … unless some clear rule demands it." *E.g.*, *Laborers Vacation Trust*, 463 U.S. at 21 n.22.

There are no overriding federal interests at stake in this case, nor does any "clear rule" demand that this Court deprive the state court of jurisdiction in this matter. Congress has unambiguously provided for a harmonious balance between state and federal enforcement concerning air pollution. As the Supreme Court noted in *Washington v. General Motors Corp.*:

> Air pollution is, of course, one of the most notorious types of public nuisance in modern experience. Congress has not, however, found a uniform, nationwide solution to all aspects of this problem and, indeed, has declared "that the prevention and control of air pollution at its source is the primary responsibility of States and local government." . . . To be sure, Congress has largely pre-empted the field with regard to "emissions from new motor vehicles," . . . and motor vehicle fuels and fuel additives. . . . It has also preempted the field so far as emissions from airplanes are concerned. . . . *So far as factories, incinerators, and other stationary devices are implicated, the States have broad control* . . . .

406 U.S. 109, 114-15 (1972) (emphasis added and internal citations omitted) (finding that "remedies for air pollution must be considered in the context of local situations," the Court denied 18 states' motion for leave to file a bill of complaint alleging violations of federal antitrust laws and common law conspiracy of restraint in trade); *see also* 42 U.S.C.A. § 7416 ("nothing in this chapter shall preclude or deny the right of any State or political subdivision thereof to adopt or enforce (1) any standard or limitation respecting emissions of air pollutants or (2) any requirement respecting control or abatement of air pollution; except that . . . such State or political subdivision may not adopt or enforce any emission standard or limitation which is less stringent than the standard or limitation under such plan or section").

Here, Sterigenics makes no effort to address the carefully crafted balance of state and federal interests in addressing air pollution outlined by federal law and argues in conclusory fashion, without any analysis or support, that addressing New Mexico's state law claims in a federal forum "will not disturb any congressionally approved balance of federal and state judicial responsibilities." (Dkt. 1. at ¶ 32).  On the contrary, and as outlined above, in enacting the CAA, Congress provided states with wide latitude to address air contamination above and beyond any federally approved limit.

Specifically, the CAA contains a savings clause entitled "Retention of State authority," codified at 42 U.S.C. § 7416. This provision focuses on states' rights, and provides that "nothing in this chapter shall preclude or deny the right of any State or political subdivision thereof to adopt or enforce (1) any standard or limitation respecting emissions of air pollutants or (2) any requirement respecting control or abatement of air pollution." *Id.*  Stated differently, federal law— and the CAA in particular—expressly preserve the State's authority to pursue precisely this kind of enforcement action.  Defendants' removal of this case to federal court threatens to undermine the state-federal balance that Congress has struck with regard to industrial sources of air pollution—and this Court's retention of the case would actually undermine that balance.  *See Illinois*, 2019 WL 1112271, at *6 (concluding that the State of Illinois's claims, including public nuisance claims under state law, did not arise under federal law and determining that the state could pursue such claims in "in its own courts, [while] Sterigenics does not explain how the State could raise such a claim as a matter of federal law").

Multiple recent federal decisions have recognized this careful balance and rejected federal jurisdiction over state law claims that seek to hold polluters to state-law standards, which may be stricter than those under federal regulations.  *See Her Majesty the Queen in Right of the Province*

*of Ontario v. Detroit*, 874 F.2d 332, 340-44 (6th Cir.1989); *Bell v. Cheswick Generating Station*, 734 F.3d 188, 196–97 (3d Cir. 2013). Sterigenics ignores the relationship among state and federal authorities and, without any basis, simply proclaims that this Court's exercise of jurisdiction over this case would not impact the carefully balanced responsibilities and interests of the federal and state governments. Sterigenics is wrong.

In sum, asserting federal subject matter jurisdiction over the State's state law claims would substantially disrupt the federal-state balance explicitly established by Congress in Section 116 of the CAA. 42 U.S.C.A. § 7416. Because the fourth prong of the *Grable* test has not been met, this case should be remanded to state court.

## IV.    CONCLUSION

Sterigenics has failed to satisfy its burden of showing that each of the four *Grable* federal question jurisdiction factors is met in this case. Pursuant to D.N.M.LR-Civ. 7.1(a), counsel for Defendant Sterigenics indicated in a telephonic meet and confer on December 30, 2020, that Defendants do not concur in the State's remand motion.

WHEREFORE, the State respectfully requests that the Court expeditiously grant its motion to remand this action to the Third Judicial District Court, County of Doña Ana, New Mexico, and grant such other relief as the Court deems appropriate and just.

Dated:  December 30, 2020

<div style="margin-left:40%">

Respectfully Submitted,

ATTORNEY GENERAL OF NEW MEXICO
HECTOR H. BALDERAS

By:     */s/ Jacqueline Ortiz*
P. Cholla Khoury
Jacqueline Ortiz
Assistant Attorneys General
P.O. Drawer 1508
Santa FE, New Mexico 87504-1508

</div>

ckhoury@nmag.gov
jortiz@nmag.gov
Tel.: (505) 717-3500
Fax: (505) 318-1050

Marcus J. Rael, Jr.
**ROBLES, RAEL & ANAYA**
500 Marquette Ave. NW
Suite 700
Albuquerque, New Mexico 87102
Tel: (505) 242-2228
Fax: (505) 242-1106
marcus@roblesrael.com

Kyle J. McGee
(*To be Admitted Pro Hac Vice*)
Viola Vetter
(*To be Admitted Pro Hac Vice*)
Jason H. Wilson
(*To be Admitted Pro Hac Vice*)
**GRANT & EISENHOFER P.A.**
123 Justison St
Wilmington, DE 19801
Tel: (302) 622-7000
Fax: (302) 622-7100
kmcgee@gelaw.com
vvetter@gelaw.com
jwilson@gelaw.com

*Special Counsel for Plaintiff the State of New
Mexico*

19

## <u>CERTIFICATE OF SERVICE</u>

I, hereby certify that on the 30th day of December 2020, a true and correct copy of the

foregoing pleading was filed and served electronically through the CM/ECF on all counsel of record.


By:   <u>*/s/ Marcus J. Rael, Jr.*</u>
        Marcus J. Rael, Jr.