**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

| | | |
|---|---|---|
| THE STATE OF NEW MEXICO, ex rel. HECTOR BALDERAS, ATTORNEY GENERAL, | § § § § | |
| Plaintiff, | § § | No.: 2:20-cv-01355-KG-KRS |
| v. | § § § | |
| STERIGENICS U.S., LLC, SOTERA HEALTH HOLDINGS, LLC, SOTERA HEALTH LLC, and SOTERA HEALTH COMPANY, | § § § § § | |
| Defendants. | § § | |

**THE STATE OF NEW MEXICO'S REPLY
IN SUPPORT OF ITS MOTION TO REMAND**

0

**TABLE OF CONTENTS**

**Page**

I.     INTRODUCTION...................................................................................................1

II.    DEFENDANTS FAIL TO MEET THE REMOVAL STANDARD..............................4

     A.     THE STATE'S COMPLAINT DOES NOT "NECESSARILY RAISE" A SUBSTANTIAL FEDERAL QUESTION....................................................................................6

     B.     NONE OF THE PURPORTED FEDERAL ISSUES ARE "SUBSTANTIAL" IN THE RELEVANT SENSE. ...............................................................................................9

     C.     EXERCISING REMOVAL JURISDICTION WOULD DISRUPT THE FEDERAL-STATE BALANCE. .........................................................................................................11

III.   CONCLUSION .................................................................................................12

The State of New Mexico, by its Attorney General Hector H. Balderas (the "State"), respectfully submits its reply in further support of its Motion to Remand. Dkt. 4.[1]

## I.    INTRODUCTION

This action concerns the subversion of environmental controls, in violation of New Mexico state law, designed to prevent the release an accumulation of dangerous concentrations of a potent carcinogen, ethylene oxide ("EtO" or "EO"), from a sterilization facility in Santa Teresa, New Mexico. As alleged in the State's Complaint, Defendants' misconduct has resulted in ambient outdoor air concentrations of EtO proximate to the facility at levels as high as 96 times the U.S. Environmental Protection Agency ("EPA") inhalation unit risk ("IUR") for EtO. The State has asserted claims exclusively under New Mexico state law.

Defendants support their claim for removal by arguing that the State's Complaint necessarily raises a substantial, disputed federal question.  Defendants have failed to satisfy their burden to show, based only upon the allegations in the Complaint, that the State's exclusively state-law claims "necessarily raise a stated federal issue, actually disputed and substantial," that may be considered in a federal forum "without disturbing any congressionally approved balance of federal and state judicial remedies." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.,* 545 U.S. 308, 314 (2005); *see also Gunn v. Minton,* 568 U.S. 251, 260 (2013).  Defendants argue in error that federal question jurisdiction exists based on federal regulatory guidelines, even though these guidelines, at most, provide context for Defendants' operations in general, and require Defendants to utilize the best available control technologies in reducing EtO emissions. Specifically, Defendants acknowledge that the purported basis for jurisdiction is the alleged need to resolve the question of "whether Sterigenics' use and emission of EO at the facility are

---

[1] Capitalized and defined terms herein have the same meaning as those terms in the State's Motion to Remand.

1

authorized under the Clean Air Act and the specific federal regulations that govern the use and emission of EO by medical sterilization facilities." Opp. Br. at 1. However, none of the State's claims are predicated on violations of any federal law, statute or regulation. Instead, its claims are based on Defendants' tortious conduct, in violation of state law, that resulted in evasion of existing environmental controls and which caused the facility to release, in uncontrolled fashion, large volumes of EtO, leading to EtO concentrations far in excess of the IUR threshold, thereby creating a substantial health risk to residents of New Mexico. The State does not claim that Defendants' emission controls are non-compliant with federal regulations; the State contends, instead, that Defendants have abused and subverted those controls in violation of *state* law. As a result, residents of Santa Teresa and nearby communities in Doña Ana County suffer materially increased health risks.

Defendants utterly fail to engage with the State's allegations of misconduct—i.e., with the facts actually alleged and the legal theories actually pled. Instead, Defendants reimagine the State's Complaint as one claiming merely that Defendants have violated the law by emitting EtO from the facility, and proceed to explain why federal law is relevant in evaluating such a claim. The problem for Defendants is that the State has not merely alleged that EtO is emitted from the facility; the State has alleged much more, including that Defendants have taken steps to bypass the environmental controls in place to protect the public, in violation of their state-law duties. This case is simply not about whether, in general, EtO may be emitted from sterilization facilities, as Defendants argue. It is about whether Defendants' actual conduct has put the New Mexico public health in jeopardy in violation of state law.

At most, Defendants' invocation of federal law has the merest relevance to this action only insofar as Defendants may argue that federal regulations furnish a defense to a limited subset of

the claims brought by the State.  Of course, it is black-letter law that a federal defense is insufficient to confer federal question jurisdiction.[2]  *See Caterpillar Inc. v. Williams*, 482 U.S. 386, 398-99 (1987) "([T]he presence of a federal question . . . in a defensive argument does not overcome the paramount policies embodied in the well-pleaded complaint rule—that the plaintiff is the master of the complaint, that a federal question must appear on the face of the complaint, and that the plaintiff may, by eschewing claims based on federal law, choose to have the cause heard in state court.").  Indeed, Sterigenics raised this same defense-based argument for federal jurisdiction in removing similar state law claims made by the State of Illinois.  Sterigenics' arguments there, largely indistinguishable from those made here, were decisively rejected by the Illinois federal court.  *See Illinois ex rel. Raoul v. Sterigenics US LLC*, No. 18 C 8010, 2019 WL 1112271 (N.D. Ill. Mar. 11, 2019) ("*Illinois*") ("Here, the [federal law] is material only to the extent that it might provide Sterigenics with a federal defense under the doctrine of preemption. . . Unfortunately for Sterigenics, a defense to state claims predicated on federal law cannot form the basis of removal.").  The same result follows here.  Ultimately, because the only federal questions purportedly raised in this litigation are the product of Defendants' defense theories, they are insufficient to support removal jurisdiction as a matter of law.

Moreover, even if such federal questions "necessarily" arise (and they do not), Defendants have failed to show that such questions meet the demanding standard of a "substantial" issue that is important to the federal system as a whole.  Finally, Defendants have failed to establish that removal would not upset the federal-state balance—nor can they, in light of the significant and overriding principles of federalism, states' rights, and comity that are necessarily jeopardized when

---

[2] Defendants' repeated reference to the Santa Teresa Plant's regulation and oversight by the U.S. Food & Drug Administration ("FDA") related to the products that it sterilizes, is a complete red herring.  The fact that a separate federal agency has oversight with regard to the products that Defendants sterilized through the use of EtO is entirely irrelevant to its conduct during the sterilization process.

a federal court presides over an action brought by a sovereign State in its own courts for claims that Congress has explicitly recognized are not preempted by federal law. The State's action should be promptly remanded to state court.

## II.    DEFENDANTS FAIL TO MEET THE REMOVAL STANDARD

To properly remove a case under the "substantial federal question" test, Defendants must satisfy four criteria: the purported federal issue is "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal state balance approved by Congress." *Gunn*, 568 U.S. at 258. Removal jurisdiction over a claim that finds its origins in state law will exist "only in extremely rare exceptions," in a "special and small," and "slim category" of cases.  *Id*. at 257-58 (citations omitted). The removal statute is strictly construed, and the Court must resolve any doubt in favor of remand. *See*, *e.g.*, *Padilla v. Am. Hallmark Ins. Co. of Texas*, Case No. 1:19-cv-01093 KWR/SMV, 2020 WL 435457, at *1 (D.N.M. Jan. 28, 2020) (citing cases).

It is "settled law that a case may *not* be removed to federal court on the basis of a federal defense, including the defense of pre-emption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties conceded that the federal defense is the only question truly at issue." *Caterpillar*, 482 U.S. at 393 (citing *Franchise Tax Board of Cal. v. Constr. Laborers Vacation. Tr. For Southern Cal.*, 463 U.S. 1, 12 (1983)) (emphasis in original). Moreover, none of the State's claims here "necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable*, 545 U.S. at 314.

In particular, the State's public nuisance claim is based on Defendants' intentional and negligent conduct in causing dangerous EtO concentrations to accumulate in Santa Teresa air, thereby presenting a significant cancer risk to residents.  Whether Defendants' conduct was

4

compliant with a federal regulatory framework requiring implementation of best available control technologies is merely a defense that turns on a factual inquiry, not a disputed legal question that could give rise to federal jurisdiction. *Oregon ex rel. Kroger v. Johnson & Johnson*, 832 F. Supp. 2d 1250, 1256 (D. Or. 2011) (citing *Hawaii v. Abbott Labs., Inc*., 469 F. Supp. 2d 842, 853 (D. Haw. 2006) (rejecting federal jurisdiction where embedded federal standard was only a peripheral issue and there was no real disagreement over its proper construction); *Penn. v. Tap Pharm. Prods., Inc.*, 415 F. Supp. 2d 516, 526 (E.D. Pa. 2005) (rejecting federal jurisdiction where there was no dispute over the proper construction of federal law).

Thus, like the plaintiff in *Schmeling v. NORDAM*, 97 F.3d 1336, 1339, 1345 n.2 (10th Cir. 1996), and contrary to Defendants' assertions (Opp. Br. at 10-11) the State's Complaint is not an example of "artful pleading." The "artful pleading" doctrine only allows "removal where federal law completely preempts a plaintiff's state-law claim." *Rivet v. Regions Bank*, 522 U.S. 470, 475 (1998).[3]  Defendants have not argued complete preemption, nor could they: complete preemption "is so extraordinary that it converts an ordinary state law common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule," *Caterpillar*, 482 U.S. at 393, and only federal statutes can completely preempt, because "[w]hether latent federal power should be exercised to displace state law is primarily a decision for Congress, not the federal courts." *Atherton v. FDIC*, 519 U.S. 213, 218 (1997).  Absent complete preemption— which Defendants do not assert—federal jurisdiction may not be sustained on a theory that the State has not advanced. *Merrell Dow Pharms. Inc. v. Thompson*, 478 U.S. 804, 810 n.6 (1986).

---

[3] *Nicodemus v. Union Pac. Corp.*, 440 F.3d 1227, 1236 (10th Cir. 2006) is inapposite where, under the statute at issue in that case, the United States had a reversionary interest in the lands when no longer used for their designated purposes and the federal government had a direct interest in the determination of property rights granted to the railroad, and federal common law applied to resolve the dispute.

5

### A.   THE STATE'S COMPLAINT DOES NOT "NECESSARILY RAISE" A SUBSTANTIAL FEDERAL QUESTION.

Duties imposed by federal law may have evidentiary relevance in establishing breaches of state law duties, but that is far from sufficient to "necessarily raise" a substantial federal question. *See* Mot. to Remand at 12-13. An issue is "necessarily raised" only where it must be resolved as an essential element of the claim itself. *State of New Mexico, ex rel. Balderas v. Purdue Pharma L.P.*, 323 F. Supp. 3d 1242, 1252 (D.N.M. 2018) (federal issues "not necessarily raised" where plaintiff could prevail by showing violations of state law duties, even though determination of duty and breach under federal statutes "will likely occur in examining Plaintiff's claims"). Defendants' arguments on this prong of the federal question test are mere attempts to repackage defense theories as elements of the State's case in chief. These efforts fail.

Defendants characterize the purported federal issue at stake in the State's public nuisance claim as whether the conduct at issue was "lawful" under federal statutes. Opp. at 11-12.[4] As the State explained in its opening brief, these issues are garden variety defenses that are clearly not "necessarily raised" as an element of the claims. *See* Mot. to Remand at 12-13. Ultimately, Defendants may decide to argue that certain federal laws or rules have permitted or authorized

---

[4] In support, Defendants' brief in opposition incorporates and argues for consideration of evidence beyond the notice of removal. *See* Opp. Br. at 2, n.1. Defendants are wrong to conclude that a court may consider "outside evidence" when determining the propriety of removal. *See, e.g., Caterpillar Inc.*, 482 U.S. at 392 (holding that the allegations on the face of a plaintiff's complaint at the time of the defendant's notice of removal govern whether federal-question jurisdiction exists); *Edwards-Flynn v. Yara*, No. CIV. 08-0186 JB/ACT, 2009 WL 1292485, *8, n.4 (D.N.M. Mar. 9, 2009) (noting that the Court must limit itself to considering evidence in the Notice of Removal and other documents in the state court record, such as the initial complaint, in determining whether Defendant had met its burden of stating facts upon which federal-question jurisdiction exists). The authority cited by Defendants is not to the contrary. For example, *Karnes v. Boeing Company*, 335 F.3d 1189 (10th Cir. 2003), held only that when defendant argues that plaintiff's claims are completely preempted—an argument that Defendants do not assert here—a court may look beyond the labels and claims in the complaint to determine whether the facts pled demonstrate the necessary application of federal law. And in *Schmidt v. International Playthings LLC*, No. CIV 19-0933, 2020 WL 7024252 (D.N.M. Nov. 30, 2020), the court held only that extrinsic evidence could be introduced by *plaintiff* in determining whether the amount in controversy to exceed the jurisdictional threshold had been established. They do not establish that courts may consider extrinsic evidence introduced by defendant in briefing in opposition to remand which could have, and should have, been presented in defendant's initial notice of removal.

their conduct—though, in fact, none do—and the State will respond in turn as with any other defense.  The cases cited by Defendants do not purport to establish federal jurisdiction under such circumstances; if they did, courts would necessarily federalize every state nuisance claim alleging environmental contamination or threats to public health.[5]  Instead, the cited decisions establish the unremarkable proposition that if a defendant's conduct was lawful, it cannot constitute a nuisance. This factual defense (which may look to federal regulations for support, or lack thereof) does not establish that federal law is an *essential element* of the claim.

Moreover, Defendants misleadingly argue that their use of EtO as alleged in the Complaint turns on the application and construction of federal regulations.    *See* Opp. Br. at 12-15. Defendants' claim that they have "lawful authority" to emit EtO ignores the plain allegations in the Complaint.  In fact, New Mexico's state law claims do not rely on Defendants' exceedance of quantitative emissions limits, but on Defendants' conduct in causing unreasonably dangerous EtO concentrations to accumulate in the Santa Teresa area due to the practice of, e.g., causing unreported, uncontrolled releases of EtO as a result of their intentional or negligent subversion of environmental controls.  Compl. ¶ 19; *see id.* at ¶ 19(a)-(c) (describing various ways in which Defendants tortiously sought to evade applicable environmental controls); *id.* at ¶¶ 118-124 (detailing statements from former employees regarding Defendants' tortious conduct in evading or ignoring existing environmental controls); *id.* at ¶ 20 (describing "uncontrolled" (i.e. unpermitted or unregulated) emissions that escaped from the Facility's back vents); *id.* at ¶ 117 (same).  In short, the State's state law tort claims relate to conduct that is unrelated to any federal or state permitted emissions levels, which—if they exist—are irrelevant to the conduct alleged.

---

[5] As the State argued in its opening brief, allowing Defendants' argument here would result in all nuisance claims becoming federal, because plaintiff would be required to affirmatively show that no federal law authorized or permitted the conduct as part of its case in chief.

As such, nothing about these allegations of tortious conduct on the part of Defendants requires analysis of any federal law or regulation, much less resolution of a substantial and disputed federal issue that is necessarily raised. *See Merrell Dow*, 478 U.S. at 817 (holding reliance on a federal standard to prove an element of a state cause of action did not, by itself, confer federal jurisdiction where the plaintiffs alleged that the defendant had engaged in conduct that violated federal regulations, and that this violation created a rebuttable presumption of negligence in a state tort action).

Finally, Defendants' argument that the *Illinois* decision is distinguishable from New Mexico's case is based on the flawed premise that the State's claims here are predicated on violations of an air quality permit. *See* Opp. Br. at 15-16. Answering whether or not the terms and conditions of any permit have been violated would not prove or disprove the merit of any claims asserted here. The acquisition of an air quality permit, and compliance with its terms, does not excuse noncompliance with other state laws, including common law duties. *See* N.M.A.C. 20.2.72.209 ("Additional Legal Responsibilities On Applicants: The issuance of a permit does not relieve any person from civil or criminal liability for failure to comply with the provisions of the Air Quality Control Act, the federal act, federal regulations thereunder, any applicable regulations of the board, and *any other applicable law or regulation*." (emphasis added)). Moreover, as described above, New Mexico's claims focus on conduct, such as efforts to bypass whatever environmental controls Defendants had put in place, that lies far afield from any permitted operations. Thus, whether the controls that do exist meet permit standards is not a core, disputed issue in this case; the question is whether Defendants' actual practices constitute violations of their duties. As in *Illinois*, New Mexico alleges that Defendants' conduct was in violation of state tort law, regardless of any permit. That was precisely the question presented to the Illinois court. *See*

8

*id.* at *6 ("Because the Court concludes that the State's complaint raises issues only of state law under the Illinois Environmental Protection Act, the Pollution Control Board regulations, and Illinois common law, remand is necessary. There are no disputed federal issues on the face of the complaint, and—as there is no way the State could have brought its claims in federal court to begin with—the Court cannot say that its complaint was drafted artfully to avoid federal jurisdiction.").

  **B. NONE OF THE PURPORTED FEDERAL ISSUES ARE "SUBSTANTIAL" IN THE RELEVANT SENSE.**

Defendants have failed to rebut the State's arguments that none of the purported federal issues are "substantial" in the relevant sense. A "substantial" federal question is one that is important "to the federal system as a whole." *Gunn*, 568 U.S. at 260. Defendants do not seriously address this requirement and ultimately fail to satisfy it. As the core issues raised in this case concern state law duties, none of the purported federal issues (largely repackaged arguments about how federal standards form a defense to the State's claims) could conceivably rise to the level of being important to the federal system as a whole, which, as the State's opening brief explained, requires nothing short of interference with a federal agency's ability to function. *See* Mot. to Remand at 14-15. Particularly where, as here, any potential federal issue would merely serve an evidentiary role, or impose duties that parallel a state-law duty, such issues are not "substantial."

It is well established that "the mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction." *Merrell Dow*, 478 U.S. at 813-814. Likewise, the mere fact that a federal issue could inform a state-law issue is insufficient to support federal removal jurisdiction. *See In Re Plavix Prods. Liability Litig. in West Virginia ex rel. McGraw v. Bristol Myers Squibb Co.,* No. 13-1603 (FLW), 2014 WL 793569, at *9 (D. N.J. Feb. 26, 2014) (explaining that federal regulations "may be consulted or analyzed in establishing certain elements of the state law claims— that in and of itself [was] not substantial under [*Grable*] to

support federal question jurisdiction," and "this case represents the very type of action the Supreme Court in *Merrell Dow* has cautioned against in finding federal question jurisdiction").

As such, Defendants' heavy-handed reference to NESHAP regulations and their parallel application here does not establish a "substantial" federal question as it relates to New Mexico's state-specific tort claims. As an initial matter, Defendants vaguely argue that the FDA has a strong interest in promoting the continued sterilization of medical products, Opp. at 16, but this argument, as discussed infra at note 2, is completely unrelated to the case as a whole, or to the State's actual allegations, or to Defendants' tortious conduct. In short, the state standards under which the alleged tortious conduct is measured is wholly unrelated to the FDA's interest in assuring the continued flow of sterilized medical products. In any event, as the State explained in the Complaint, the FDA has already addressed this specious argument, stating that protection of public health and safeguarding air quality must take precedence over medical supply chain issues, which can be remedied without imperiling the public. *See* Compl. ¶¶ 104-07.

Defendants next argue that under the Clean Air Act ("CAA"), certain regulatory standards address the emissions of EtO. However, the State's claims do not seek to challenge or rebut these standards such that their introduction in the case would impact application of these standards nationally. Instead, New Mexico seeks to enforce state law to combat tortious conduct that resulted in dangerous concentrations of EtO accumulating in excess of the EPA IUR threshold. (In fact, if any federal "standard" is relevant in this case, it is the IUR—but this metric is not "disputed," as Defendants have not even acknowledged it in their notice of removal or opposition brief, nor does litigation touching upon it threaten to rise to the level of a "substantial" issue important to the federal system as a whole.) The introduction of CAA-derived NESHAP standards here hardly qualifies as "substantial" given that all sterilization facilities emitting EtO nationwide would

10

continue to be subject to the same standards, the meaning or interpretation of which will not change as a result of this litigation. As such, the actual issue raised by this case is merely the extent and scope of New Mexico law as applied to the conduct of Sterigenics at the Santa Teresa Plant. The answer to that particular issue is hardly one that addresses, alters, or informs any uniform federal regulatory scheme. As such, Defendants fail to explain how the federal issues purportedly necessarily raised by the State's claims rise to the level of being important to the federal system as a whole because the issues actually raised in this case are intensely "fact-bound and situation-specific," posing no risk of disruption to federal agency business and presenting no "nearly pure issue of law," as required to warrant removal jurisdiction. *Purdue Pharma*, 323 F. Supp. 3d at 1252.

C.   **EXERCISING REMOVAL JURISDICTION WOULD DISRUPT THE FEDERAL-STATE BALANCE.**

Defendants fail to respond to the point that principles of comity require federal courts to abstain from exercising jurisdiction over state-law claims brought by a sovereign State "'unless some clear rule demands it.'" *West Virginia ex rel. McGraw v. CVS Pharm., Inc.*, 646 F.3d 169, 179 (4th Cir. 2011) (quoting *Franchise Tax Bd.*, 463 U.S. at 21 n.22)). This final prong of the substantial federal question test is designed to protect against removal of claims such as those asserted by New Mexico here. Defendants merely recycle their arguments on the first three *Grable* prongs in maintaining that state interests are superseded by federal interests in this case.

Moreover, Defendants' argument distorts the carefully crafted balance between federal and state responsibilities in the context of air pollution that have long been established by the U.S. Congress. *See* Mot. to Remand at 16 (noting that states have broad authority to address and remedy air pollution above and beyond the limits set forth in federal law and explicitly provide a savings clause to allow for state law claims to proceed). Indeed, authority quoted by Defendants supports

this very point, noting that where there is "an express congressional preference to avoid federal adjudication," cases should be heard in state court. Opp. Br at 18-19 (quoting *State ex rel. Jacobson v. Wells Fargo Nat'l Bank, N.A.,* 824 F.3d 308, 316 (2nd Cir. 2016). As established in the State's opening brief, the CAA provides just such an express preference against federal adjudication by acknowledging that nothing "shall preclude or deny the right of any State or political subdivision thereof to adopt or enforce (1) any standard or limitation respecting emissions of air pollutants or (2) any requirement respecting control or abatement of air pollution." 42 U.S.C. § 7416. Defendants fail to even address this point—essentially conceding the State's position. As such, the exercise of federal jurisdiction over the State's state law claims would do substantial damage to the long recognized ability of plaintiffs to seek to hold polluters accountable to state-law standards, which may be stricter than those under federal regulations. *See* Mot. to Remand at 17-18.[6]

## III.   CONCLUSION

For the foregoing reasons and the reasons stated in New Mexico's Motion to Remand, the State respectfully requests that this Court remand the State's case to the Third Judicial District Court, County of Doña Ana, New Mexico, for lack of subject matter jurisdiction.

---

[6] Defendants cite several federal decisions that recognize that Congress provided a private right of action in federal court for violations of the CAA. *See* Opp. Br at 19-20. However, Congress' recognition of a private right of action in federal courts for violation of *federal law*, has no bearing on a federal court's jurisdiction over *state law claims*. The relevant CAA provision to look to in analyzing the fourth prong of the substantial federal question test is the savings clause. In any event, the CAA provision providing for citizen suits has its own savings clause recognizing that "[n]othing in this section or in any other law of the United States shall be construed to prohibit, exclude, or restrict any State, local, or interstate authority from—(1) bringing any enforcement action or obtaining any judicial remedy or sanction in any State or local court . . . ." 42 U.S.C. § 7604(e).

Dated January 20, 2021

Respectfully Submitted,

ATTORNEY GENERAL OF NEW MEXICO
HECTOR H. BALDERAS

By:    */s/ Jacqueline Ortiz*
P. Cholla Khoury
Jacqueline Ortiz
Assistant Attorneys General
P.O. Drawer 1508
Santa FE, New Mexico 87504-1508
ckhoury@nmag.gov
jortiz@nmag.gov
Tel.: (505) 717-3500
Fax: (505) 318-1050

Marcus J. Rael, Jr.
**ROBLES, RAEL & ANAYA**
500 Marquette Ave. NW
Suite 700
Albuquerque, New Mexico 87102
Tel: (505) 242-2228
Fax: (505) 242-1106
marcus@roblesrael.com

Kyle J. McGee (*To be Admitted Pro Hac Vice*)
Viola Vetter (*To be Admitted Pro Hac Vice*)
Jason H. Wilson (*To be Admitted Pro Hac Vice*)
**GRANT & EISENHOFER P.A.**
123 Justison St
Wilmington, DE 19801
Tel: (302) 622-7000
Fax: (302) 622-7100
kmcgee@gelaw.com
vvetter@gelaw.com
jwilson@gelaw.com

*Counsel for Plaintiff*

13

## **CERTIFICATE OF SERVICE**

I, hereby certify that on the 20th day of January 2021, the foregoing document was filed and

served electronically through the CM/ECF on all counsel of record.

HECTOR H. BALDERAS
ATTORNEY GENERAL OF NEW MEXICO

By:     */s/ Marcus J. Rael, Jr.*
          Marcus J. Rael, Jr.

14