IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

THE STATE OF NEW MEXICO, ex rel.
HECTOR BALDERAS,
ATTORNEY GENERAL,

    Plaintiff,

vs.                                                      Civ. No. 20-1355 KG/KRS

STERIGENICS U.S., LLC, SOTERA
HEALTH HOLDINGS, LLC,
SOTERA HEALTH LLC, and
SOTERA HEALTH COMPANY,

    Defendants.

## MEMORANDUM OPINION AND
## ORDER REMANDING CASE TO STATE COURT

Since 1989, Defendants have used ethylene oxide (EtO), a toxic gas, at their Santa Teresa Plant to sterilize and fumigate, *inter alia,* medical devices. At the end of December 2020, Plaintiff filed a lawsuit in the Third Judicial District Court, Dona Ana County, State of New Mexico, alleging state law claims against Defendants for harmful EtO emissions. Defendants subsequently removed the case to federal court on the basis that the action gives rise to federal question jurisdiction. In response to the removal, Plaintiff filed the instant "The State of New Mexico's Motion to Remand" (Motion to Remand). (Doc. 4). The Motion to Remand is now fully and timely briefed. *See* (Docs. 14-17). Having considered the briefing, the Complaint (1-2), the controlling law, and for the following reasons, the Court grants the Motion to Remand.

*I. The Complaint (Doc. 1-2)*

    *A. Summary of Factual Allegations*

Plaintiff alleges that "[s]ince 1989, Defendants have used and continue to use substantial quantities" of EtO "in their industrial sterilization processes at the Santa Teresa Plant." (Doc. 1-2) at ¶ 6. Plaintiff maintains that EtO is "a highly toxic, carcinogenic air pollutant...." *Id.* In fact, according to Plaintiff, "[t]he National Toxicology Program, a federal program, has recognized EtO as a known human carcinogen since 2000, and as a likely human carcinogen since 1985." *Id.* at ¶ 8. Also, in 2016, the United States Environmental Protection Agency's (EPA) Integrated Risk Information System "program released an evaluation of EtO carcinogenicity, noting "that EtO is a mutagenic carcinogen that causes cancer by damaging DNA in cells, which is then duplicated when the cells divide." *Id.* at ¶ 10.

Plaintiff alleges that "EtO emitted by Defendants from the Santa Teresa Plant has significantly deteriorated air quality in Santa Teresa and surrounding communities for decades, and has materially contributed to increased health risks suffered by residents of such communities." *Id.* at ¶ 17. According to Plaintiff, in 2018, "the EPA published results from its 2014 National Air Toxics Assessment" study which found that "residents of Santa Teresa and surrounding locations are at a statistically significantly increased risk of developing cancer" due to EtO exposure. *Id.* at ¶ 21.

Plaintiff contends that Defendants know that EtO is a dangerous air pollutant. *See id.* at ¶¶ 87-107. Even so, Plaintiff asserts that "Defendants have long promoted the environmental safety of their EtO sterilization and fumigation practices." *Id.* at ¶ 154. Plaintiff alleges that "[d]uring the initial permit application process and subsequent modification application

processes, Defendants misrepresented or omitted material information from the New Mexico Environment Department and its predecessor agency." *Id.* at ¶ 146. Plaintiff maintains that

> [e]ven if Defendants had lawfully obtained air quality permits, made no misrepresentations or omissions during the approval and modification processes, and complied with all permit conditions … such permits would not relieve Defendants from the obligation to otherwise comply with State law, including Defendants' common-law duties to the State, the local community in and around Santa Teresa, and the New Mexico public in general.

*Id.* at ¶ 148.

### B. Causes of Action

Plaintiff filed suit in state court bringing several state law causes of action. Relevant to this Motion to Remand, Plaintiff brings a common law public nuisance cause of action and a cause of action under the New Mexico public nuisance statute, NMSA 1978, § 30-8-1 (2004 Repl. Pamp.).

New Mexico courts recognize that "common law public nuisance is similar to the New Mexico public nuisance statute, Section 30-8-1." *State ex rel. Vill. of Los Ranchos de Albuquerque v. City of Albuquerque* (*City of Albuquerque II*), 1994-NMSC-126, ¶ 52, 119 N.M. 150; *see also City of Albuquerque v. State ex rel. Vill. of Los Ranchos de Albuquerque* (*City of Albuquerque I*), 1991-NMCA-015, ¶ 15, 111 N.M. 608 (deeming "it unnecessary to distinguish between" statutory public nuisances and common law public nuisances). Section 30-8-1 provides that "[a] public nuisance consists of knowingly creating, performing or maintaining anything affecting any number of citizens without lawful authority which is … injurious to public health…."

## II. The Notice of Removal (Doc. 1)

Defendants contend that this Court has federal question jurisdiction because Plaintiff's public nuisance claims "arise[] under the Constitution, laws, or treaties of the United States."

3

28 U.S.C. § 1331. Specifically, Defendants assert that Plaintiff's allegation that the Santa Teresa Plant's harmful levels of EtO emissions "constitute a public nuisance raise a substantial federal question...." (Doc. 1) at ¶ 27. Defendants also assert that the Court has supplemental subject matter jurisdiction over the remaining state law causes of action. *See* 28 U.S.C. § 1367(a).

*III. Discussion*

A defendant can remove a state case to federal district court if the federal district court would have original jurisdiction over the matter. 28 U.S.C. § 1441(a). However, "[s]ince federal courts are courts of limited jurisdiction, [courts] presume no jurisdiction exists absent an adequate showing by the party invoking federal jurisdiction." *Dutcher v. Matheson*, 733 F.3d 980, 985 (10th Cir. 2013) (citation omitted). "As the parties removing this case to federal court, [Defendants] bear the burden of establishing jurisdiction by a preponderance of the evidence." *Id.*

"Congress has authorized the federal district courts to exercise original jurisdiction in 'all civil actions arising under the Constitution, laws, or treaties of the United States,' 28 U.S.C. § 1331...." *Gunn v. Minton*, 568 U.S. 251, 257 (2013). "To determine whether [a] claim arises under federal law, [courts] examine the 'well[-]pleaded' allegations of the complaint and ignore potential defenses...." *Devon Energy Prod. Co., L.P. v. Mosaic Potash Carlsbad, Inc.*, 693 F.3d 1195, 1202 (10th Cir. 2012) (quoting *Beneficial Nat'l Bank v. Anderson,* 539 U.S. 1, 6 (2003)). "Under the 'well-pleaded complaint' rule, 'a suit arises under federal law only when the plaintiff's statement of his own cause of action shows that it is based on federal law.'" *Id.* (citation and internal quotation marks omitted). "This rule 'makes the plaintiff the master of the claim.'" *Id.* (quoting *Caterpillar Inc. v. Williams,* 482 U.S. 386, 392 (1987)). In other words, "[b]y omitting federal claims from a complaint, a plaintiff can [generally] guarantee an action

4

will be heard in state court." *Id.* (quoting *Qwest Corp. v. City of Santa Fe,* 380 F.3d 1258, 1264 n. 1 (10th Cir. 2004)).

"Under the 'artful pleading' doctrine, however, a plaintiff may not defeat removal by failing to plead federal questions that are essential elements of the plaintiff's claim." *Turgeau v. Admin. Rev. Bd.*, 446 F.3d 1052, 1060 (10th Cir. 2006) (citation omitted). Similarly, a recognized exception to the well-pleaded complaint rule occurs when "there is a substantial, disputed federal-law issue necessarily embedded in [the plaintiff's] state-law claims." *Devon Energy Prod. Co., L.P.*, 693 F.3d at 1203-04. As the United States Supreme Court in *Gunn* recognized, only a "slim" category of cases with their origins in state law can arise under federal law. *Gunn*, 568 U.S. at 258. In those cases, "federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Id.*

"[A] few important principles" mark "[t]he narrow boundaries of the substantial question category" of federal question jurisdiction. *Becker v. Ute Indian Tribe of the Uintah & Ouray Rsrv.*, 770 F.3d 944, 947 (10th Cir. 2014). First, "the mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction." *Id.* (quoting *Merrell Dow Pharm. Inc. v. Thompson,* 478 U.S. 804, 813 (1986)). Second, federal question jurisdiction cannot "depend solely on 'a federal defense, ... even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue.'" *Id.* (quoting *Caterpillar Inc.,* 482 U.S. at 393). "Finally, if a claim does not present 'a nearly pure issue of law, one that could be settled once and for all and thereafter would govern numerous ... cases,' but rather is 'fact-bound and situation-specific,' then federal question

5

jurisdiction will generally be inappropriate." *Id.* at 947-48 (quoting *Empire Healthchoice Assurance, Inc. v. McVeigh,* 547 U.S. 677, 700-01 (2006)).

Defendants argue first that the public nuisance claims necessarily raise a federal issue. Defendants contend that an essential element of the statutory public nuisance claim is that the public nuisance occurred "without lawful authority." *See* NMSA 1978, § 30-8-1. In this case, Defendants assert that to determine whether the use and emission of EtO at the Santa Teresa Plant was "without lawful authority" one must apply and interpret federal EPA regulations promulgated under the Clean Air Act that control the industrial use of EtO, including Defendants' permit to operate the Santa Teresa Plant. Defendants conclude that this need to apply and interpret federal regulations necessarily raises a federal question.

Although the "without lawful authority" language appears to be an element of a statutory public nuisance claim, New Mexico courts have found that language provides a defense. *See State ex rel. Smith v. Riley,* 1997-NMCA-063, ¶¶ 8-9, 12, 123 N.M. 453 (concluding, in alternative, that "Petitioners have not stated a claim under Section 30-8-1 because they have not alleged that Respondents did not have lawful authority"). In the context of public works projects that may constitute a public nuisance, the New Mexico Court of Appeals promulgated the following rules:

> If the public works project is in existence and poses a present nuisance, <u>due authorization is a qualified defense</u>; courts may or may not decide that despite the defense the project is still a nuisance. However, if the project has yet to be constructed and is challenged as an anticipatory nuisance in fact, <u>due authorization—as we have defined it in this opinion—is an absolute defense</u>; courts will summarily conclude that there is no basis for a finding of nuisance.

*City of Albuquerque II,* 1994-NMSC-126 at ¶ 63 (emphasis added). In promulgating those rules, the New Mexico Court of Appeals referred to Section 30-8-1's "without lawful authority" language to formulate the issue in that case: "In a complicated project like the building of a

bridge, does the fact that it complies with lawful authority preclude any claim of public nuisance?" *Id.* at ¶ 62. The New Mexico Court of Appeals then observed that "[a]s this [public nuisance] statute relates to public works projects, 'lawful authority' is synonymous with 'due authorization' as we have defined it above: conformance with all the federal, state, and local laws, rules, and regulations pertinent to that particular project." *Id.* In a related case, the New Mexico Court of Appeals determined that "the City's constitutional and statutory authority to construct public highways and bridges <u>constitutes a valid defense</u> to a claim of nuisance per se under either" statutory or common law public nuisance law. *City of Albuquerque I*, 1991-NMCA-015 at ¶ 15 (emphasis added).

From those New Mexico cases, one could reasonably conclude that the "without lawful authority" language in the public nuisance statute can provide the basis for a defense and is not an element of a public nuisance claim. Such a defense does not "necessarily" raise a federal issue. *See Schumacher v. Sterigenics U.S., LLC*, 394 F. Supp. 3d 837, 844 (N.D. Ill. 2019) (noting that "[a]lthough Defendants may ultimately choose to defend against Plaintiffs' claims by introducing evidence that they complied with federal law, it is well settled that this would not be a basis for the exercise of federal jurisdiction").

Assuming for the sake of argument that Plaintiff has "necessarily" raised a federal issue in its public nuisance claims, the next issue in determining if a substantial federal question exists is whether the parties actually dispute the federal issue. Here, Plaintiff does not assert in their public nuisance causes of action that Defendants violated any federal regulations or federal statute. Instead, Plaintiff simply alleges that Defendants knowingly created and maintained a public nuisance by injuring the health of the public through its emission of toxic levels of EtO. Plaintiff's public nuisance "claims can succeed without reference to any federal statute" or

regulation. *Id.* at 845. In other words, even if a jury found that Defendants "complied with federal standards, the jury could nevertheless determine that state [public nuisance] common law [and the state statutory public nuisance law] impose[] a standard of care higher than that expressly required by federal law." *Id.* For these reasons, the federal issue, whether Defendants had lawful authority for their EtO emissions under EPA regulations and the Clean Air Act, is not actually disputed in this case.

Even so, Defendants argue that the public nuisance claims raise substantial issues of federal law related to the application and interpretation of EPA regulations. Defendants maintain that the outcome of the public nuisance claims will impact "the entire medical products sterilization industry that is essential to the supply of medical products [in] the United States." (Doc. 14) at 17. Moreover, Defendants maintain that "the determination will impact the regulatory framework that Congress and the EPA established to govern air emissions generally and, specifically, the use and emission of E[t]O by medical sterilization facilities in the United States." *Id.*

The public nuisance claims, however, do "not present 'a nearly pure issue of law, one that could be settled once and for all and thereafter would govern numerous ... cases,'...." *Becker*, 770 F.3d at 947-48 (citation omitted). Rather, the public nuisance claims raise a factual question specific to the Santa Teresa Plant: whether Defendants knowingly created, performed, or maintained a situation at the Santa Teresa Plant that produced harmful EtO emissions resulting in injury to the health of the public in the Santa Teresa area. *See* NMSA 1978, § 30-8-1. This "fact-bound and situation-specific" question does not constitute a "substantial" federal question. *Becker*, 770 F.3d at 948 (citation omitted) (stating that under those circumstances "federal question jurisdiction will generally be inappropriate").

Finally, Defendants argue that the Court's exercise of subject matter jurisdiction will not upset any congressionally approved balance of federal and state judicial responsibilities. This last requirement for substantial federal question jurisdiction "focuses principally on the nature of the claim, the traditional forum for such a claim, and the volume of cases that would be affected." *New York ex rel. Jacobson v. Wells Fargo Nat'l Bank, N.A.*, 824 F.3d 308, 316 (2d Cir. 2016). In addition, "[a]bsent a special state interest in a category of litigation, or an express congressional preference to avoid federal adjudication, federal questions that implicate substantial federal interests will often be appropriately resolved in federal rather than state court." *Id.*

In particular, Defendants note that the Clean Air Act provides a private right of action for any "person," including States, for violations of emission standards or limitations, and permits. 42 U.S.C. §§ 7604(a)(1) and (3), and 7602(e). The Clean Air Act also gives federal district courts original jurisdiction over those actions. *Id.* at § 7604(a). Yet, the Clean Air Act also provides that nothing "shall preclude or deny the right of any State … to adopt or enforce (1) any standard or limitation respecting emissions of air pollutants or (2) any requirement respecting control or abatement of air pollution; except that" the State "may not adopt or enforce any emission standard or limitation which is less stringent than the standard or limitation under such plan or section." *Id.* at § 7416. Furthermore, nothing in the citizen suit provision "or in any other law of the United States shall be construed to prohibit, exclude, or restrict any State … from—(1) bringing any enforcement action or obtaining any judicial remedy or sanction in any State or local court…." *Id.* at § 7604(e).

To summarize, while the Court has subject matter jurisdiction over any lawsuit brought by a State alleging violations of EPA regulations and the Clean Air Act, States also have the

9

right to require even more stringent air pollution requirements than the Clean Air Act and to bring suit in state court to enforce those requirements. Hence, Congress expressly contemplated state lawsuits, like this one, which allege public nuisance claims based on the emission of air pollutants that exceed EPA and Clean Air Act requirements. *See Bell v. Cheswick Generating Station*, 734 F.3d 188, 198 (3d Cir. 2013) (acknowledging that circuit courts "have affirmed decisions granting plaintiffs relief against sources of air pollution under state law nuisance theory;" *Her Majesty The Queen In Right of the Province of Ontario v. City of Detroit*, 874 F.2d 332, 342–43 (6th Cir. 1989) (holding that "plain language of the [Clean Air Act's] savings clause ... clearly indicates that Congress did not wish to abolish state control"); *Mayor & City Council of Baltimore v. BP P.L.C.*, 388 F. Supp. 3d 538, 563 (D. Md. 2019), *as amended* (June 20, 2019), *aff'd,* 952 F.3d 452 (4th Cir. 2020), *cert. granted,* 141 S. Ct. 222 (2020) (noting that "language of these provisions unequivocally demonstrates that 'Congress did not intend the federal causes of action under [the Clean Air Act] to be exclusive'") (citation and internal quotation marks omitted).

The Court further recognizes that public nuisance claims are typically of a state nature and traditionally tried in state court. *See McDougall v. CRC Indus., Inc.*, 2021 WL 810635, at *9 (D. Minn.) (noting that "[p]ublic nuisance claims have traditionally been the purview of the state"); *City of Philadelphia v. Beretta U.S.A., Corp.*, 126 F. Supp. 2d 882, 893 (E.D. Pa. 2000), *aff'd,* 277 F.3d 415 (3d Cir. 2002) (observing that "public nuisance claim ... seeks to exert traditional state power"). Given that the Clean Air Act allows for more stringent state limitations on emissions and state lawsuits to enforce those limitations, forcing Plaintiff to litigate, in federal court, its more exacting state public nuisance claims, claims traditionally brought by States in

state court, would upset the congressionally approved balance of federal and state judicial responsibilities set forth in the Clean Air Act.

For all of the above reasons, Plaintiff's public nuisance claims do not "necessarily depend[] on resolution of a substantial question of federal law" and, thus, do not fall within the "slim" category of state law cases arising under federal law. *Gunn*, 568 U.S. at 258; *Empire Healthchoice Assurance, Inc.*, 547 U.S. at 690. As such, the Court cannot conclude that Plaintiff artfully drafted the Complaint to avoid federal jurisdiction. Under the well-pleaded complaint rule, Plaintiff, as master of its complaint, should have its lawsuit heard in state court. Put another way, Defendants have not met their burden of establishing federal question jurisdiction by a preponderance of the evidence. A remand is appropriate under these circumstances.

IT IS ORDERED that

1. The State of New Mexico's Motion to Remand (Doc. 4) is granted; and

2. this lawsuit is remanded to the Third Judicial District Court, Dona Ana County, State of New Mexico.

_____
UNITED STATES DISTRICT JUDGE